■ MARILYN TSCHIDA, Appellant, v. CONTINENTAL CASUALTY COMPANY, Respondent.— Judgment, unanimously modified, on the law and on the facts, to increase the recovery by plaintiff against defendant by the sum of $4,290, with interest, making a total recovery of $6,364.64, with interest, and judgment otherwise affirmed, without costs or disbursements. On this appeal from a judgment rendered following trial by the court without a jury, unless we affirm, we should grant the judgment which the court below ought to have granted (see *Society of N. Y. Hosp. v. Burstein*, 22 A D 2d 768, and cases cited) and, on the basis of the record, we conclude that the plaintiff is entitled to recover weekly indemnity benefits for a period beyond that for which defendant conceded liability. The plaintiff, a professional dancer, sustained serious injuries to her knee in a fall on May 2, 1961. Following hospital treatment, she engaged in various therapeutic exercises, including at a dancing

school in October and November, 1961, but, on standing, walking, or attempting to dance, her knee would swell and collapse. She testified that: "I found if I would walk a certain amount, it would swell and it would tire very easily. And I could just stand and my knee would just go apart for no reason and just collapse on me. * * * I felt like it was just separating. * * * Usually I would fall. And then it would go back and I would be on the floor * * *." In February, 1962, she had an operation on her knee to remove the medial semilunar cartilage and, also, in the operation, a soft and rubbery area on the underside of the pattela was dissected and removed. After the operation, the pain and instability in the left knee continued. The defendant conceded liability under its policy for payment of weekly indemnity benefits for the period to May 2, 1962, but contended on the trial that it is not liable for benefits beyond such date. The evidence, however, establishes the plaintiff's disability did not then end. She continued to have pain and instability in the knee; her kneecap would "constantly snap" and would "go in and out". The testimony is that she should undergo an operation to relieve the pain and allow further improvement. The plaintiff's testimony and the medical testimony and reports in the record fully support her statements that until February 7, 1963, she engaged in no activities and "couldn't do anything". The record supports the finding, now made, that until then, within the meaning of the policy provisions, she was "wholly and continuously disabled and * * * under the regular care and attendance of a legally qualified physician * * * and prevented by reason of said injury from engaging in each and every occupation or employment for wage or profit for which [she] is reasonably qualified by training, education or experience". On February 7, 1963, she did obtain work as a model, and continued in such employment and in other work for which she was reasonably qualified by training, education or experience. She performed this work with difficulty, but we conclude that from February 7, 1963, she was not wholly and continuously disabled so as to entitle her to weekly benefits beyond such period. Concur — Stevens, J. P., Eager, Steuer, Capozzoli and McNally, JJ. [48 Misc 2d 61.]